IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LINDA ANDREWS,

        Plaintiff,

vs.                               Case No. 16-4173-SAC

UNITED STATES OF AMERICA,

        Defendant.

## MEMORANDUM AND ORDER

This is a Federal Tort Claims Act case arising from a trip and fall at a post office. This case is now before the court upon defendant's motion for summary judgment. For the reasons stated below, the court concludes that defendant has succeeded in showing that there is a lack of evidence for an essential element of plaintiff's case – that the post office had actual or constructive notice of a dangerous condition which it was obliged to abate. Therefore, the court shall grant the motion for summary judgment.

I. Summary judgment standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A "genuine dispute as to a material fact" is one "such that a reasonable jury could return a verdict for the nonmoving

1

party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id.</u> A movant may show the absence of a genuine issue of material facts by negating the other party's claim or by pointing out a lack of evidence for the other party on an essential element of that party's claim. <u>Kannady v. City of Kiowa</u>, 590 F.3d 1161, 1169 (10th Cir. 2010). If this initial burden of production is met, the nonmovant may not rest on her pleadings, but must bring forward specific facts showing a genuine issue for trial as to the dispositive matters for which she has the burden of proof. <u>Id.</u> At the summary judgment stage, the court's job "is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . If [however] the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50. In applying the above standards, the court views the evidence and all reasonable inferences therefrom in a light most favorable to the nonmoving party. <u>City of Herriman v. Bell</u>, 590 F.3d 1176, 1181 (10th Cir. 2010).

II. <u>Uncontroverted facts</u>

The following facts are considered uncontroverted for the purposes of defendant's motion, or, if they are controverted, are interpreted in the light most favorable to plaintiff.

On December 8, 2014, at around 10:15 a.m., plaintiff fell as she entered from the outside into the lobby area of the United States Post Office at 2921 SE Adams St., Topeka, Kansas. That post office has two areas open to the public:  a lobby area, accessible from the outside through outward opening doors, and the window area that is accessed from the lobby through another set of doors.  Plaintiff alleges that she tripped over a floor mat just inside the lobby entrance and fell onto her left knee.  There were no witnesses to her fall.

Plaintiff has testified that after she fell, she looked at the floor mat and noticed it was "kind of frayed, and it was bunched up."  But, she didn't know whether it was her fall that caused the mat to be bunched up.  It was also her testimony that she didn't notice the mat before she fell and didn't know the condition of the mat or whether it was bunched up before her fall.  She has stated, however, that she believed her foot went under the mat when she opened the door and that this caused her to trip.

Plaintiff reported her fall to the post office manager, Susan Grasmick, not long after she fell.  Grasmick took

3

plaintiff's statement and filled out a handwritten accident investigation worksheet. According to the worksheet, plaintiff reported that she tripped on the entrance rug. Plaintiff refused medical assistance and told Grasmick that "she was just extremely embarrassed." Grasmick took a photograph of the floor mat.

Then Grasmick completed an electronic version of the accident investigation worksheet. On the electronic version, Grasmick reported that "the lobby rug was in place and slightly buckled in some areas." Grasmick has testified that she had no knowledge about the condition of the mat immediately before plaintiff fell, or what caused the buckles she observed after plaintiff fell. The floor mat was provided by Cintas, a company under contract to replace the post office's mats on a regular basis. Grasmick has no knowledge of prior falls by customers at the post office.

Kevin Henderson cleans the lobby area of the post office every weekday morning from 6:00 a.m. to 8:00 a.m. when he leaves to attend to other post offices. Part of his job every day is vacuuming and checking the floor mats. Henderson has not been told that part of his job is checking the mats for "buckles" or wrinkles. But, he tries to make sure the mats are in the right place and he has stated that he would remove a bad rug if he saw one. Henderson cleaned the lobby of the post office on the day

Case 5:16-cv-04173-SAC    Document 30    Filed 11/08/17    Page 5 of 11

plaintiff fell, but he left the building around 8:00 a.m. He testified that the rugs were flat when he was there on December 8, 2014. He also testified that he had no specific memory of their condition on that day.

Other employees assigned to the post office do not enter the building through the lobby and they perform almost all of their duties in areas other than the lobby. On a daily basis, a postal employee will service mail boxes that are located in the lobby. On less than a daily basis, a postal employee may go into the lobby area to replenish certain mailing supplies.

There is no written policy advising employees to make sure the floor mats are flat. But, Grasmick testified that any unsafe condition should be abated immediately. The post office has weekly five-minute safety meetings and an annual meeting regarding slip-and-fall safety. But, the meetings relate to employee safety not customer safety.

III. <u>There is no evidence that the post office had actual or constructive notice of a dangerous condition</u>.

To succeed upon her FTCA claim alleging negligence by a federal agency or employee in the State of Kansas, plaintiff must prove liability in the same manner as she would against a private individual defending against a similar negligence claim pursuant to Kansas law. 28 U.S.C. § 2674. To succeed upon the negligence claim asserted here, a plaintiff must prove: (1) the

defendant owed a duty to the plaintiff; (2) the duty was breached; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff sustained damages. Wagoner v. Dollar General Corp., 955 F.Supp.2d 1220, 1224 (D.Kan. 2013).

Defendant contends that plaintiff cannot show the post office breached a duty of reasonable care to plaintiff as a business invitee. The post office owes a duty to business visitors to use reasonable care to keep the post office premises safe. Id. In slip-and-fall or trip-and-fall cases, this duty is commonly analyzed on the basis of whether the defendant had actual or constructive notice of a dangerous condition so that the defendant could correct the condition or provide notice to business invitees of the danger. Id. The post office is assumed to have knowledge or notice of dangerous conditions which it is responsible for creating. See Sipple v. Sears, Roebuck & Co., 553 F.Supp. 908, 909 (D.Kan. 1982); see also, Wilson v. Wal-Mart Stores, Inc., 2008 WL 2622895 *7-8 (D.Kan. 6/30/2008). The post office is also charged with knowledge or notice of a dangerous condition created by others if the post office actually knew of the condition or if the condition had been present for such a period of time that the post office had constructive notice of it. Sipple, 553 F.Supp. at 909; see also P.I.K. Civil § 126.04.

6

Plaintiff has not produced evidence showing that the post office caused the floor mat to bunch up or otherwise did something to create the alleged dangerous condition. Rather, plaintiff claims that the post office had constructive notice of the dangerous condition. Doc. No. 28, p. 13. But, plaintiff cites no evidence to support this claim.

Plaintiff states that the post office custodian's duties included vacuuming and dusting the lobby area of the post office where plaintiff fell and that the custodian was not told his job was to make sure the mats were flat. Plaintiff further states that there was a two-hour fifteen-minute period between when the post office custodian left the building at 8:00 a.m. and plaintiff's fall at 10:15 a.m. Finally, plaintiff notes that the post office manager observed that the mat was buckled after plaintiff's fall. Plaintiff asks the court to infer from this evidence that the post office should have known about the buckles in the mat. But, the facts cited by plaintiff provide no evidence of when the mat bunched up. The court can only speculate that the mat was buckled for a significant period of time before plaintiff's fall. This is not sufficient to sustain plaintiff's burden upon an essential element of her case. See Kimes v. U.S.D. No. 480, 934 F.Supp. 1275, 1279-80 (D.Kan. 1996)("Where the plaintiff fails to show that an allegedly dangerous substance had been on the floor for any length of time

prior to her fall, or that the defendant had knowledge of its presence, the plaintiff cannot recover for negligence."); see also <u>Martin v. Wal-Mart Stores, Inc.</u>, 1992 WL 19835 *4 (10th Cir. 2/6/1992)(affirming judgment for store where there was no evidence as to how long a dangerous condition existed in restroom where plaintiff slipped and fell); <u>Napell v. Aten Dept. Store, Inc.</u>, 115 F.Supp.2d 1275, 1279-80 (D.Kan. 2000)(no proof of breach of duty owed to business invitee without proof of a slippery condition on floor at time of fall).

In sum, plaintiff has not produced evidence to support a reasonable inference that the post office had actual or constructive notice of the condition of the floor mat at the time plaintiff fell.  Therefore, plaintiff cannot prove an essential element of her case - that the post office violated a duty of care owed to plaintiff as a business visitor under Kansas law.

IV. <u>The mode-of-operation rule does not apply</u>.

Plaintiff presents one other argument.  Plaintiff asserts there is evidence supporting the application of the mode-of-operation rule.  Under the mode-of-operation rule, notice of a dangerous condition may be implied upon two conditions:  (1) the business owner's mode of operation was such that a dangerous condition could regularly occur; and (2) the business owner failed to use reasonable measures, considering the risk

involved, to discover the dangerous condition and remove it.
P.I.K. Civil § 126.05; see also Wagoner, 955 F.Supp.2d at 1224-
25 (quoting Jackson v. K-Mart Corp., 840 P.2d 463, 470 (Kan.
1992)(interior quotation omitted)). Plaintiff cites evidence
for the second condition, that defendant failed to use
reasonable measures to discover the bunched up mat. But,
plaintiff does not cite evidence for the first condition, that
there was a mode of operation in which a bunched up floor mat
could regularly occur.

Plaintiff asserts that two cases support applying the mode-
of-operation rule. The court disagrees. One of the cases, Roy
v. Chili's of Kansas, Inc., 2012 WL 5458872 (D.Kan. 11/8/2012),
involves a trip and fall over a floor mat. But, it does not
concern the mode-of-operation rule. The court denied a summary
judgment motion in Roy because there was evidence that the
upturned floor mat was attributable to the defendant's own
negligence in returning the mats to the restaurant entryway
without due care or in failing to use due care in maintaining
the safety of the entryway. Id. at *3. In contrast, plaintiff
does not cite to evidence that the post office caused the floor
mat to be bunched up.

The other case cited by plaintiff is Hembree v. Wal-Mart of
Kansas, 35 P.3d 925 (Kan.App. 2001). In Hembree, the court
found that the mode-of-operation rule did not apply for two

reasons: (1) the evidence did not establish Wal-Mart's mode of operation created a situation in which a dangerous condition could regularly occur; and (2) Wal-Mart had an apparently reasonable system to check for dangerous conditions and had implemented the system. 35 P.3d at 903-04. These are the same conditions, of course, as the court cited previously. Plaintiff contends that the post office, in contrast to the Wal-Mart store in Hembree, had no reasonable system for checking dangerous conditions. But, plaintiff does not allege evidence demonstrating the first condition - that the post office's mode of operation created a situation in which a wrinkled floor mat could regularly occur.

There is a failure of proof that it was foreseeable to the post office, because of its mode of operation, that a dangerous condition could regularly occur. Therefore, the post office did not breach a duty to plaintiff by failing to take steps to correct or warn against the alleged dangerous condition. See Wagoner, 955 F.Supp.2d at 1226-27 (dismissing mode of operation claim in a trip and fall case where there was no proof that rug was turned up or over on a regular basis or that other customers tripped over the rug).

V. Conclusion

There is a lack of evidence to support the essential element for liability that the post office had actual or

constructive notice of a dangerous condition caused by its own actions or that of others, or that a dangerous condition was foreseeable because of the post office's mode of operation. Therefore, defendant's motion for summary judgment shall be granted.

**IT IS SO ORDERED.**

Dated this 8th day of November, 2017, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge